Filed 1/15/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G050478 |
|      v. | (Super. Ct. No. 96WF0092) |
| TODD EUGENE WHITE, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Patrick Donahue, Judge. Affirmed.

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Andrew Mestman and Junichi P. Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

\*       \*       \*

Todd Eugene White appeals from an order denying his petition for recall of his indeterminate life sentence under Penal Code section 1170.126 (all further statutory references are to this code), which was enacted as part of the Three Strikes Reform Act (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) text of Prop. 36, § 6, pp. 109-110 (hereafter Voter Information Guide).)

Defendant contends the trial court erred in determining the record of his underlying conviction demonstrated he was "armed" during the commission of the offense of being a felon in possession of a firearm because (1) the case it relied upon, *People v. White* (2014) 223 Cal.App.4th 512 (*White*), is inapposite; and (2) the disqualifying factor of being "armed" during the commission of the offense for which the indeterminate life sentence was imposed cannot apply to a mere possessory offense. We affirm.

Defendant attempts to distinguish *White* on the basis the evidence in that case "inexorably established" the defendant actually, rather than constructively, possessed the gun in question because he was observed throwing the gun away – whereas here, the police did not *observe* defendant discard his gun into the trash can where it was later found. But it is nonetheless clear defendant's conviction was based on either the inference he discarded the gun into the trash can on that occasion or he had placed it there earlier. Either way, his possession amounts to being armed. Consequently, *White* is not materially distinguishable.

And while it may be true that case law has established one cannot be armed "in" the commission of a firearm possession – which is the wording used in the statute governing a firearm *enhancement* – the wording of the "armed" disqualification incorporated into section 1170.126 is somewhat different. It applies to offenders who were armed with a firearm "during" the commission of their offense. That states a different rule which would not exclude possessory offenses.

2

FACTS

In 1996, defendant was convicted of possession of a firearm by a felon (§ 12021, subd. (a).) He was also found to have been previously convicted of two serious felonies and to have served two prior prison terms within the meaning of section 667.5, subdivision (b). He was sentenced to a term of 27 years to life in prison.

The circumstances of defendant's offense were that on the morning of January 8, 1996, he was walking along a sidewalk carrying a fanny pack by its straps. A police officer noticed defendant from across the street, and observed he had a tattoo on his neck. That meant defendant matched the general description of the suspect in a recent armed robbery. The police officer drove up next to defendant, who turned and walked into the parking lot of the Executive Suites Motel. As the officer drove his patrol car into the motel's parking lot, he lost sight of defendant.

The officer called for backup and a few moments later, he saw defendant walking along the second story corridor of the motel. The officer got out of his car and asked defendant to speak with him. Defendant came down the motel's south stairwell and as he exited the stairwell, the officer noticed his fanny pack appeared to be less full than it had appeared as defendant was walking along the street.

The officer then retraced defendant's path up the motel's south stairwell and across the corridor, looking for anything defendant might have discarded along the way. The officer found a loaded .9 millimeter semi-automatic pistol in a trash can located on the motel's north stairwell. A subsequent search of defendant's fanny pack revealed two more bullets of the same make and caliber as the ones in the gun. No identifiable fingerprints were found on either the gun or the ammunition.

Defendant testified on his own behalf at the underlying trial. He denied having any firearm in his possession when he arrived at the motel, and denied placing the

3

firearm in the trash can in the motel's north stairwell. He explained that when he arrived at the motel, he went up the north stairwell to the second story corridor, and he acknowledged he passed the trash can there. He claimed that the two bullets found in his fanny pack were ones he had found on the motel stairs and picked up.

In 2013, defendant filed a petition for recall of his sentence pursuant to section 1170.126. The trial court initially determined he was eligible for relief, but denied the petition on the basis that resentencing defendant posed an unreasonable risk of danger to public safety. (§ 1170.126, subd. (f).) However, the court later granted defendant's motion for reconsideration, but ultimately determined that defendant was ineligible for resentencing relief on the ground he was "armed" during the commission of his offense of possessing the firearm.

DISCUSSION

*1. The Resentencing law*

Section 1170.126 was enacted by voter initiative in 2012 as part of the Three Strikes Reform Act. (Voter Information Guide, *supra*, text of Prop. 36, § 6, p. 109.) Among the stated purposes of the initiative, as explained to voters, was to "[r]estore the Three Strikes law [sections 667 and 1170.12] to the public's original understanding by requiring life sentences only when a defendant's current conviction is for a violent or serious crime" and to "[m]aintain that repeat offenders convicted of non-violent, non-serious crimes like shoplifting and simple drug possession will receive twice the normal sentence instead of a life sentence." (*Id.* § 1, p. 105.)

In accordance with those goals, section 1170.126 provides persons who were previously sentenced to indeterminate life terms under an earlier version of the "Three Strikes" law the opportunity to petition for recall of their sentences and

resentencing to the term that would have been imposed for their crime under the revised Three Strikes law passed by the voters in the form of Proposition 36. Thus, section 1170.126, subdivision (b) specifies that the relief to be obtained through a successful petition is "resentencing in accordance with the provisions of subdivision (e) of Section 667, and subdivision (c) of section 1170.12, as those statutes have been amended by the act that added this section." (§ 1170.126, subd. (b).)

Consequently, the initial inquiry under section 1170.126 is whether an inmate who is already serving an indeterminate life sentence under the Three Strikes law would have been sentenced to that same indeterminate life term under the revised sentencing provisions of the Three Strikes Reform Act. And the petition to recall the indeterminate life sentence is required to specify the exact basis for its imposition: "The petition . . . shall specify all of the currently charged felonies, which resulted in the sentence under paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12, or both, and shall also specify all of the prior convictions alleged and proved under subdivision (d) of Section 667 and subdivision (b) of Section 1170.12." (§ 1170.126, subd. (d).)

Subdivision (e) of section 1170.126 then details which inmates are "eligible" for resentencing, based upon what they were sentenced for originally. The first requirement is that "[t]he inmate is serving an indeterminate term of life imprisonment imposed pursuant to [the Three Strikes law] for a conviction of a felony or felonies that are not defined as serious and/or violent felonies . . . ." (§ 1170.126, subd. (e)(1).)

The second requirement is that "[t]he inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12." (§ 1170.126, subd. (e)(2).) These cross-referenced offenses include certain controlled

5

substance charges, certain felony sex offenses, as well as offenses during the commission of which "the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person."  (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).)  And the third requirement relates to prior convictions, specifying that the eligible inmate "has no prior convictions for any of the offenses appearing in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clause (iv) of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12."  (§ 1170.126, subd. (e)(3).)

If the inmate meets these basic eligibility requirements, he or she must be resentenced in accordance with section 667, subdivision (e)(1) and section 1170.12, subdivision (c)(1) – i.e., to twice the term otherwise provided as punishment for the current felony – "*unless the court, in its discretion*, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."  (§ 1170.126, subd. (f), italics added.)  Thus, whether an *eligible* inmate actually *obtains* resentencing relief will depend upon the court's discretionary assessment of the inmate's dangerousness.

*2. Attempt to Distinguish White*

In denying defendant's petition on eligibility grounds, the trial court relied on *White*, another case in which a defendant whose prior conviction was for being a felon in possession of a firearm was ruled ineligible for resentencing relief under section 1170.126, subd. (e)(2) because he was "armed" during the commission of his possession offense.  The trial court concluded the facts in *White* "closely match" the facts in this case, noting that as in *White*, defendant was "in actual possession of the firearm" and had "ready access" to it.

6

Defendant claims, however, that *White* is distinguishable because in that case, the evidence "inexorably established" that the defendant, who was seen throwing his gun into the back of a truck, actually possessed the gun – whereas here, the police did not *observe* defendant discard his gun into the trash can where it was later found. Moreover, defendant points out that the jury in the underlying case was not required to find he actually possessed the gun; a finding of constructive possession was sufficient to convict him. In defendant's view, these distinctions mean the record of his conviction is insufficient to establish he was actually armed with the gun in question, as was established in *White.* We disagree.

There were two versions of defendant's relationship with the gun that were presented at trial. The first version, offered by the prosecution, was that defendant had the loaded gun in his fanny pack when he veered into the motel premises after the police officer drove up next to him. He then disposed of the gun in the trash can located on the motel's north stairwell, leaving two extra bullets in the fanny pack. When he was summoned back downstairs to speak with the officer, his fanny pack appeared lighter because it no longer had the gun in it. The second version, offered by defendant, was that he had no gun in his possession when he entered the motel premises, passed right by the trash can on the north stairwell as he made his way to the second level corridor, and found on the ground two bullets of the same make and caliber as those in the gun.

But even under defendant's scenario, the jury's determination that he *possessed* the gun would lead to the conclusion he was legally armed. The jury's finding that defendant possessed the gun found in the trash can necessarily implies he was at least aware it was hidden there. "A conviction for possession of a gun must be based on intentional actual or constructive possession of the gun [citation], not merely walking nearby." (*People v. Elder* (2014) 227 Cal.App.4th 1308, 1313.) When defendant was first approached by the police officer in the street, he turned directly into the motel, and

7

assuming he did not have the gun in his fanny pack, he went straight for the trash can where he knew it was already hidden. And as he walked by that trash can – as he conceded he did – that gun was readily accessible to him. That qualifies defendant as being "armed." As our Supreme Court has explained, "'[i]t is the availability – the ready access – of the weapon that constitutes arming.'" (*People v. Bland* (1995) 10 Cal.4th 991, 997.)

It is well settled that a defendant is armed with a weapon even though it is not carried on his person, when he is aware it is hidden in a place readily accessible to him. (*People v. Elder, supra,* 227 Cal.App.4th 1308 [the defendant was encountered outside of his residence, and the gun was found inside on a shelf]; *People v. Vang* (2010) 184 Cal.App.4th 912 [the defendant was encountered on the driveway of his residence, and the gun was found in his locked bedroom]; *People v. Searle* (1989) 213 Cal.App.3d 1091 [the defendant was encountered selling drugs from his car, and the gun was found in an unlocked compartment in the back of the car].)

So even if the jury believed defendant's testimony that he did not bring the gun into the motel on the occasion in question, its finding that he had possession of the gun located in the trash can, combined with his admission he walked right by it immediately after the police officer drove alongside him, demonstrates he qualified as armed during that possession. Consequently, *White* is not materially distinguishable.

*3. Defendant Could be "Armed" During his Possession of a Firearm for Purposes of Eligibility for Resentencing Relief*

Defendant also argues that his original conviction, being for a "possessory" offense, cannot support a finding he was armed during its commission. We disagree. Defendant's argument is based largely on language in *People v. Bland, supra,* 10 Cal.4th

8

991, 1002 (*Bland*), which explains why the sentence enhancement that applies when a defendant is found to be armed "*in* the commission" of an offense (§ 12022, subd. (a)(1), italics added) requires not only that that the arming happen "during" the commission, but also that it have a "facilitative nexus" to the commission of the offense. As defendant points out, being armed with a firearm does not *facilitate* the felony of merely possessing one. (See *In re Pritchett* (1994) 26 Cal.App.4th 1754, 1757 [rejecting an arming enhancement on the basis that defendant's "'possessory use'" of a shotgun – as a club – did not further his offense of *possessing* it].)

However, that analysis is based specifically on the language of the arming enhancement, which is different from the language used to limit eligibility for relief under section 1170.126, subdivision (e)(2). Whereas the arming enhancement uses the phrase "armed with a firearm *in the commission* of a felony" (§12022, subd. (a)(1), italics added), subdivision (e)(2) of section 1170.126 incorporates by reference the phrase "[*d*]*uring* the commission of the current offense." (Italics added.) While the former phrase, as explained in *Bland*, means the arming not only must occur *during* the commission of the felony, but must *also* facilitate it – the latter phrase specifically requires only that the arming occur *during* the commission. That states a different rule which would not exclude possessory offenses as a basis for finding a defendant was armed for purposes of determining eligibility for resentencing relief under section 1170.126. This same conclusion was reached in *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1031-1032, and we concur in its reasoning on that point.

Moreover, the distinction makes sense for purposes of the Three Strikes sentencing revisions effectuated with the passage of Proposition 36. The overall goal of the revisions is to draw distinctions between the repeat offenders who have committed serious or violent crimes and those who have not. (Voter Information Guide*, supra,* text of Prop. 36, § 6, at pp. 109-110.) And as pointed out in *People v. Blakely* (2014) 225

Cal.App.4th 1042, 1057, "'[t]he threat presented by a firearm increases in direct proportion to its accessibility. Obviously, a firearm that is available for use as a weapon creates the very real danger it will be used.' [Citation.] The same cannot necessarily be said about a firearm that is merely under the dominion and control of a person previously convicted of a felony. For instance, a firearm passed down through family members and currently kept in a safe deposit box by a convicted felon would be under his or her dominion and control, but would present little or no real danger." Thus, a felon who found to be armed with a firearm can generally be assumed to pose a more serious risk than one who merely possessed the firearm without being in a position to actually use it.

Defendant posits various arguments designed to convince us that section 1170.126 should nonetheless be construed as precluding a finding that a defendant convicted merely possessing a firearm, without any other offense, is ineligible for resentencing relief. We find none convincing.

Defendant points out that while the law has long since made it a crime for a felon to *possess* a firearm – whether actually or constructively – it has never created nor recognized any separate crime of being a felon who is *armed* with a firearm, and it has never before provided for additional punishment for such a felon unless he or she is also engaged in the commission of some other crime. He suggests that in light of that backdrop, section 1170.126 should also be construed as drawing no such distinction.

But defendant's argument ignores the fact that Proposition 36 changed the rules for determining Three Strikes punishment – not only for past crimes that qualify for relief under section 1170.126, but also *prospectively*. Thus, for purposes of crimes committed on or after November 7, 2012 (see § 1170.125), the same distinction is drawn between a felon's mere possession of a firearm and the felon's arming. Under these revised sentencing provisions, if a defendant's third strike offense qualifies as non-serious and non-violent (such as felon's mere possession of a firearm) – that defendant

10

will be sentenced under the new law to only twice the statutory maximum term, rather than to an indeterminate life sentence. But if the prosecution pleads and proves specified aggravating factors, including that the defendant was armed *during* his commission of the otherwise non-serious, non-violent offense (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)C)(iii), an indeterminate life sentence will be imposed. Consequently, whatever the law may have allowed before, the revised Three Strikes sentencing provisions allow a third strike felon who is found guilty of possessing a firearm to be sentenced to an indeterminate life sentence if his possession of that firearm also qualified as being "armed." Construing section 1170.126 in the same fashion certainly creates no inconsistency.

Defendant also argues that because section 1170.126 was drafted to exclude certain specified crimes from sentencing relief – those crimes listed as serious and/or violent felonies under sections 667.5, subdivision (c) and 1192.7 – that list would have included felony possession of a firearm if it were intended to be a disqualifying crime. (See *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 13 [noting interpretive canon that "'the expression of certain things in a statute necessarily involves exclusion of other things not expressed'"].) But of course, the mere possession of the firearm, without arming, is not a disqualifying crime. And in this case, the trial court determined defendant did not merely "possess" the firearm, he was armed with it. He was disqualified from relief based upon his arming, not his mere possession.

Defendant also argues it is unnecessary to exclude felons in possession of firearms from *eligibility* for resentencing relief under subdivision (e) of section 1170.126, based on the circumstances of their possession, because if those circumstances suggest dangerousness, the felon would be deemed unsuitable for resentencing by the court under subdivision (f) of the statute. As defendant claims, "not a single dangerous person will be released early" if the statute is interpreted in his favor. That may be true. But the

11

electorate was entitled to draw a line decreeing that any third strike felon who was actually armed with a prohibited firearm – no matter how benign the circumstances – was categorically ineligible for resentencing relief.  It is not this court's role to second-guess that determination.

DISPOSITION

The order is affirmed.


                                        RYLAARSDAM, ACTING P. J.

WE CONCUR:


MOORE, J.


THOMPSON, J.