Filed 7/7/21  P. v. Curtis CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C088228 |
| Plaintiff and Respondent, | (Super. Ct. No. 94F06354) |
| v. | |
| ERIC CURTIS, | |
| Defendant and Appellant. | |

The trial court denied defendant Eric Curtis's petition for recall of sentence pursuant to Penal Code section 1170.126 (statutory section references that follow are to the Penal Code unless otherwise stated) upon concluding that the prosecution established, beyond a reasonable doubt, defendant was ineligible because, at the time he committed a third strike offense, he was armed with a firearm within the meaning of section 667, subdivision (e)(2)(C)(iii).

1

On appeal, defendant asserts that substantial evidence does not support the trial court's finding, beyond a reasonable doubt, that he was armed with a firearm during the commission of either of his underlying offenses.

We affirm the judgment.

## FACTS AND HISTORY OF THE PROCEEDINGS

The underlying facts are quoted from the nonpublished opinion on defendant's prior appeal from the denial of his first section 1170.126 petition. (*People v. Curtis* (Nov. 4, 2015, C077452) [nonpub. opn.]; see *People v. Guilford* (2014) 228 Cal.App.4th 651, 660-661 (*Guilford*) [prior appellate opinion admissible to prove ineligibility in section 1170.126 proceeding].) That opinion, in turn, derived its facts from a previous nonpublished opinion affirming defendant's conviction. (*People v. Curtis* (Aug. 15, 1997, C021885) [nonpub. opn.].)

"An eyewitness observed two men leaving a Sacramento convenience store—one carrying a shotgun. The men briefly hid behind dumpsters, then ran to a nearby parking lot where a tan Subaru station wagon waited. The men entered the Subaru's front and rear passenger doors on the right side; the car started to drive away before the men were completely inside the car. The eyewitness, after dialing 911 and giving a description of the getaway car, followed the Subaru to a nearby bowling alley. He did not see anyone enter or leave the Subaru, but lost sight of it when it left the bowling alley parking lot.

"A California Highway Patrol (CHP) officer saw the Subaru pass and gave chase, leading to a high-speed pursuit. Five times, the Subaru drove into the oncoming traffic lane, in an apparent attempt to force traffic to swerve around and collide with the CHP vehicle. The Subaru also ran a red light, nearly causing several cars to collide. At one point, a shotgun was thrown from the right side of the vehicle. When the Subaru finally stopped, three men got out; defendant from the driver's door.

"At trial, defendant testified to spending the day of the robbery with his good friend of four years, Kevin Price, and an acquaintance, Oscar Foster (Price and Foster were the two passengers in the Subaru). In the afternoon, defendant borrowed his girlfriend's car, a yellow Subaru station wagon. He claimed the three drove to a bowling alley, where the two friends left defendant and returned 40 minutes later. Defendant denied knowing anything unusual had happened until a number of police vehicles began following the Subaru as he drove. Defendant also denied knowing of the shotgun until Foster pointed the shotgun at him, telling him to evade the police."

Defendant was convicted of possession of a firearm by a felon (former § 12021) and felony evasion of a peace officer (Veh. Code, § 2800.2). Under the Three Strikes law, in light of his two prior strike convictions, the trial court sentenced defendant to an aggregate term of 50 years to life.

Defendant filed a petition for recall and resentencing pursuant to section 1170.126. In 2015, another panel of this court affirmed the trial court's order denying defendant's petition. Under the standard of proof employed at the time, this court concluded that substantial evidence supported the trial court's finding, by a preponderance of the evidence, that defendant was armed with a firearm during his third strike offense and he was therefore ineligible for resentencing. (*People v. Curtis* (Nov. 4, 2015, C077452) [nonpub. opn.].)

Subsequently, in *People v. Frierson* (2017) 4 Cal.5th 225, 235-236, 239-240 (*Frierson*), our high court held that the prosecution has the burden of proving that a defendant is ineligible for resentencing under the Three Strikes Reform Act of 2012 beyond a reasonable doubt rather than by a preponderance of the evidence.

After *Frierson*, on May 30, 2018, defendant again petitioned for recall of his sentence pursuant to section 1170.126.

On October 25, 2018, the trial court denied defendant's petition. In denying the petition, the trial court relied on this court's 2015 decision affirming the denial of

3

defendant's prior petition, "the transcript of the judgment and sentence," and "the American and British definition of credulity."

## DISCUSSION

Defendant argues that substantial evidence does not support the trial court's finding, beyond a reasonable doubt, that he was armed with a firearm during the commission of his charged offenses. Defendant contends that his knowledge of and proximity to the shotgun while he was in the Subaru was not sufficient to constitute substantial evidence supporting a finding, beyond a reasonable doubt, that he was armed with a firearm at the time he committed the underlying offenses.

Proposition 36, the Three Strikes Reform Act of 2012 (the Act), amended the Three Strikes sentencing scheme. Section 1170.126, added by the Act, permits a three strikes inmate serving a life term for felonies that are not defined as serious and/or violent in subdivision (c) of section 667.5 or subdivision (c) of section 1192.7 to petition for resentencing. (§ 1170.126, subds. (b), (e)(1).) However, an inmate is not eligible for resentencing if, among other statutory grounds, during the commission of the third strike offense, the defendant "was armed with a firearm or deadly weapon." (§ 667, subd. (e)(2)(C)(iii).)

One of defendant's convictions was for possession of a firearm by a felon. (Former § 12021.) However, that a person *possesses* a firearm does not necessarily mean that person is *armed* with a firearm. "A firearm can be under a person's dominion and control without it being available for use." (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1030, disapproved on another ground in *Frierson, supra*, 4 Cal.5th at p. 240, fn. 8.) "Thus, while the act of being armed with a firearm—that is, having ready access to a firearm [citation]—necessarily requires possession of the firearm, possession of a firearm does not necessarily require that the possessor be armed with it." (*People v. White* (2014) 223 Cal.App.4th 512, 524 (*M. White*).) Hence, the mere fact of defendant's conviction of

4

possession of a firearm by a felon (former § 12021) does not establish that he was *armed* with a firearm at the relevant time. (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1048 (*Blakely*) ["a person convicted of being a felon in possession of a firearm is not automatically disqualified from resentencing by virtue of that conviction; such a person is disqualified only if he or she had the firearm available for offensive or defensive use"].)

"A defendant is *armed* if the defendant has the specified weapon available for use, either offensively or defensively." (*People v. Bland* (1995) 10 Cal.4th 991, 997 (*Bland*); accord, *People v. Perez* (2018) 4 Cal.5th 1055, 1065 (*Perez*); *Blakely, supra*, 225 Cal.App.4th at p. 1051.) " ' "[I]t is the availability—the ready access—of the weapon that constitutes arming." ' " (*M. White, supra*, 223 Cal.App.4th at p. 524, quoting *Bland*, at p. 997, & *People v. Mendival* (1992) 2 Cal.App.4th 562, 574.) " '[A] defendant is armed with a weapon even though it is not carried on his person, when he is aware it is hidden in a place readily accessible to him.' " (*People v. Valdez* (2017) 10 Cal.App.5th 1338, 1351 (*Valdez*), quoting *People v. White* (2016) 243 Cal.App.4th 1354, 1362 (*T. White*).) "Because section 1170.126 requires only that the arming be 'during' the commission of the crime, there is no facilitative nexus requirement as when the arming must also be in furtherance of a felony." (*Valdez*, at p. 1349, citing *People v. Hicks* (2014) 231 Cal.App.4th 275, 283-284 (*Hicks*).)

In *Frierson*, our high court held that the prosecution bears the burden of proving a defendant's ineligibility for resentencing under section 1170.126 beyond a reasonable doubt. (*Frierson, supra*, 4 Cal.5th at pp. 230, 235-236, 239-240.) In a case following *Frierson*, our high court stated: "Proposition 36 permits a trial court to find a defendant was armed with a deadly weapon and is therefore ineligible for resentencing only if the prosecutor proves this basis for ineligibility beyond a reasonable doubt. In addition, we hold that the trial court's eligibility determination may rely on facts not found by a jury; such reliance does not violate the right to a jury trial under the Sixth Amendment to the United States Constitution. A reviewing court, in turn, must defer to the trial court's

5

determination if it is supported by substantial evidence." (*Perez, supra*, 4 Cal.5th at p. 1059.) Under the substantial evidence standard, we review the entire record in the light most favorable to the trial court's factual findings to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could make the relevant factual findings beyond a reasonable doubt. (Cf. *People v. Bolin* (1998) 18 Cal.4th 297, 331.)

The factual determination of whether defendant was armed with a firearm during the commission of the underlying offenses and is thus ineligible for resentencing "is analogous to the factual determination of whether a prior conviction was for a serious or violent felony under the three strikes law. Such factual determinations about prior convictions are made by the court based on the record of conviction. [Citation.] And the appellate opinion is part of the record of conviction." (*Hicks, supra*, 231 Cal.App.4th at p. 286; see *Guilford, supra*, 228 Cal.App.4th at pp. 660-661 [prior appellate opinion admissible to prove ineligibility in section 1170.126 proceeding].)

Here, after quoting and summarizing portions of our prior decision affirming the denial of defendant's prior section 1170.126 petition, the trial court noted that "[e]verything [this court] talk[ed] about in that whole section discusses what was going on inside the Subaru and the arming of the defendant within the confines of the Subaru." Thus, defendant emphasizes that the trial court limited its consideration to what occurred inside the Subaru. From this, defendant asserts: "Thus, the circumstances under which [defendant] could be found to be armed during either offense began when the firearm was carried into the Subaru and ended when the firearm was thrown from the Subaru. But, [defendant] contends that his knowledge of, and proximity to, the firearm does not suffice to create substantial evidence of a finding beyond a reasonable doubt." We disagree with this argument.

According to the factual recitation in our prior decision, two men, one of whom had a shotgun, entered the Subaru, one through the front passenger door and one through

the rear passenger door. The Subaru subsequently led law enforcement officers on a high-speed chase involving numerous dangerous maneuvers. At some point during the course of this high-speed pursuit, someone threw a shotgun from the right side of the Subaru. When the Subaru finally stopped, defendant got out of the car through the driver's door.

Defendant accepts the premise that he was the driver of the Subaru. Indeed, he testified at trial that he was the driver. (*People v. Curtis* (Nov. 4, 2015, C077452) [nonpub. opn.].) We need not make the factual determination whether defendant was driving, although it is obviously the logical conclusion given that he left the car from the driver's door.

This evidence establishes defendant was in the Subaru with Price and Foster and, more importantly, the shotgun. The shotgun was in the Subaru from the time the two passengers joined the driver of the Subaru until someone threw the shotgun out of the car.

From all of the foregoing, we conclude that substantial evidence supports the trial court's determination, beyond a reasonable doubt, that defendant was armed with a shotgun from at least the time the passengers entered the Subaru until the shotgun was thrown from the vehicle. As defendant was one of the three occupants of the Subaru into which one of the men carried the shotgun, the shotgun was available for his use, offensively or defensively. (See *Bland, supra*, 10 Cal.4th at p. 997.) As one of the three occupants of the Subaru, defendant necessarily had access to the weapon if he knew it was there. The record does not even suggest that the other two occupants of the car somehow hid the weapon once they got into the car. Once in the Subaru, whatever role defendant played, the shotgun was readily accessible to him. (See *ibid*.; accord, *Valdez, supra*, 10 Cal.App.5th at p. 1351; *T. White, supra*, 243 Cal.App.4th at p. 1362.)

Additionally, as a different panel of this court previously noted in defendant's appeal from the denial of his previous section 1170.126 petition, "[d]uring deliberation, the jury sent a note: 'On page 31a, it says that constructive possession requires that "a

7

person knowingly exercise control or the right to control a thing . . . ." [¶] Does this mean that constructive possession requires that "a person knowingly exercise control or exercise the right to control a thing . . . ." [¶] In other words, if we believe he had the right to control the weapon, must he have exercised that right to be found guilty?' The court responded: 'The answer is the defendant either exercised control or had the right to exercise control. [¶] The question that you have written, "or exercise the right to control," is not an interpretation under the instruction.' " (*People v. Curtis* (Nov. 4, 2015, C077452) [nonpub. opn.].) Based on the jury note and the trial court's response, in convicting defendant of possession of a firearm by a felon, at the least, the jury necessarily found that defendant had the right to exercise control over the shotgun.

One paragraph of our prior decision, which in turn quoted the trial court's determination in that prior proceeding, stated: "Here, substantial evidence supports the finding that defendant was armed with a firearm during his third strike offense. The trial court relied on the shotgun's proximity and the defendant's knowledge of the shotgun: 'The shotgun was within his reach. It was nearby. He had ready access to it. It was available for offensive and defensive purposes, although the defendant claimed he did not know there was a shotgun in the car until it was pointed at him. That defies credulity. It's a shotgun not a handgun or a revolver that is easily concealed.' The court also noted that defendant was driving his girlfriend's car; that he was friends with the passengers; and that he was behind the wheel of the get-away car as the two perpetrators fled the scene, armed with the shotgun." (*People v. Curtis* (Nov. 4, 2015, C077452) [nonpub. opn.].) The trial court here addressed that paragraph by defining the word "credulity." The trial court then went on to conclude: "that is essentially saying there is no reasonable doubt as to whether he possessed the firearm. And that is from the Court that actually heard the trial. [¶] That Court had absolutely no doubt that [defendant] had that weapon available for offensive or defensive purposes within the confines of that vehicle, and therefore, the defendant is not eligible, as he is armed with a firearm. It is a disqualifying

8

factor. [¶] So the request to have him resentenced under 1170.126, even under the Frierson analysis, is denied."

Based on the recitation of the facts in our prior decision, we, too, independently conclude that, once the shotgun was in the Subaru, whatever defendant's role was, the shotgun was within his reach, readily accessible to him, and available for offensive or defensive use. Based on that recitation of facts, we would also conclude that the notion that defendant would not realize that a shotgun had been brought into the Subaru until it was pointed at him defies credulity.

Defendant relies on *T. White, supra*, 243 Cal.App.4th 1354. In *T. White*, a police officer spotted the defendant walking down the street carrying a fanny pack. (*Id*. at p. 1358.) Because the defendant matched the general description of a suspect in an armed robbery, the officer drove his patrol car next to the defendant. (*Ibid*.) The defendant turned away and walked into the parking lot of a motel, and the officer followed. (*Ibid*.) The officer lost sight of the defendant but, moments later, he saw the defendant walking along the second story corridor of the motel. (*Ibid*.) The officer got out of his car and asked the defendant to come speak with him and defendant came down the stairs toward the officer. (*Ibid*.) The officer noted the fanny pack appeared to be less full than it had appeared before. (*Ibid*.) Retracing the defendant's path, the officer found a loaded nine-millimeter semiautomatic pistol in a trash can. (*Ibid*.) A search of the fanny pack revealed two bullets of the same make and caliber as those in the gun. (*Ibid*.) At trial, the defendant denied he had a firearm when he arrived at the hotel and denied placing a firearm in the trash can. (*Ibid*.) He did admit, however, that he walked by the garbage can. (*Ibid*.) He testified he had found the two bullets on the motel stairs and picked them up. (*Ibid*.)

On appeal from the denial of his Proposition 36 petition, the defendant contended his case was different from the situation where a defendant is seen in actual possession and thus excluded under the arming exception. (*T. White, supra*, 243 Cal.App.4th at

9

pp. 1357, 1361.) Unlike that situation, according to the defendant, he could not be found to have been armed because the police never saw him discard the weapon in the trashcan or otherwise observed him in physical possession of it. (*Id*. at p. 1361.) Rejecting that contention, the Court of Appeal reasoned, "it [was] clear [the] defendant's conviction was based on either the inference he discarded the gun into the trash can on that occasion or he had placed it there earlier. Either way, his possession amounts to being armed." (*Id*. at p. 1357.) The court explained that the jury necessarily concluded that the defendant possessed the gun found in the trash can, and, in turn, that finding necessarily implied that the defendant was "at least aware it was hidden there." (*Id*. at p. 1361.) The Court of Appeal reasoned: "When [the] defendant was first approached by the police officer in the street, he turned directly into the motel, and assuming he did not have the gun in his fanny pack, he went straight for the trash can where he knew it was already hidden. And as he walked by that trash can—as he conceded he did—that gun was readily accessible to him. That qualifies [the] defendant as being 'armed.' As our Supreme Court has explained, ' "[i]t is the availability—the ready access—of the weapon that constitutes arming." ' " (*Id*. at pp. 1361-1362, quoting *Bland, supra*, 10 Cal.4th at p. 997.) The *T. White* court concluded: "So even if the jury believed [the] defendant's testimony that he did not bring the gun into the motel on the occasion in question, its finding that he had possession of the gun located in the trash can, combined with his admission he walked right by it immediately after the police officer drove alongside him, demonstrates he qualified as armed during that possession." (*T. White*, at p. 1362.)

The holding in *T. White* does not alter our decision. On the contrary, defendant's presence in the Subaru is equivalent to the *T. White* defendant's presence near the trash can. In both cases, the defendants had ready access to the weapons involved. Moreover, we have concluded that the trial court's determination, beyond a reasonable doubt, that defendant was aware of the presence of the shotgun in the Subaru is supported by substantial evidence.

The hypothetical raised in *M. White*, on which defendant relies, is also not helpful to him. In the passage on which defendant relies, that court, discussing the distinction between possessing a firearm and being armed with a firearm, stated: "For example, a convicted felon may be found to be a felon in possession of a firearm if he or she knowingly kept a firearm in a locked offsite storage unit even though he or she had no ready access to the firearm and, thus, was not armed with it." (*M. White, supra*, 223 Cal.App.4th at p. 524.) These hypothetical circumstances bear no similarity to the facts at issue here, where defendant was in the Subaru in close proximity to the readily accessible shotgun. Defendant's circumstances are more analogous to the defendant's in *T. White* than the hypothetical in *M. White*.

Defendant's primary contention, factually, is based on the way in which he was driving the Subaru. He asserts: "during the time [defendant] could be armed he was occupied by operating the Subaru in a manner that did not allow for accessibility to the gun. The relevant facts establish that law enforcement chased the vehicle at high speeds. [Defendant] repeatedly drove the Subaru into the lane for oncoming traffic apparently attempting to force a collision between oncoming traffic and law enforcement. He also ran a red light nearly causing other cars to collide. Again, all of this happened at high speed. [¶] [Defendant] argues that there is no credible basis to find that a firearm could be reasonably said to be accessible to him during these maneuvers with a fast moving car. In that light, substantial evidence did not support the trial court's finding, beyond a reasonable doubt, that [defendant] was armed during the commission of either of his offenses, and particularly during his attempt to evade law enforcement."

Defendant's argument misses the mark entirely. The shotgun was readily accessible to defendant in the Subaru, available to him for offensive and defensive use. That is the end of the inquiry. Whether defendant may or may not have crashed the Subaru if he grabbed the shotgun is irrelevant and does not alter the calculus. What would have happened after defendant grabbed the shotgun has no bearing on whether it

11

was readily accessible to him for offensive or defensive use during the commission of the underlying offenses. Substantial evidence supports the trial court's determination, beyond a reasonable doubt, that defendant was armed with the shotgun.

Defendant similarly asserts in his reply brief that the Attorney General "does not even consider how a driver might readily gain access to a firearm in the vehicle without stopping the vehicle or crashing. Indeed, in either case when the vehicle stops moving, the evasion is over and availability then has meaning after the evasion of officers, not during."

This contention, too, misses the mark. Again, in considering whether defendant was armed with a firearm, we do not analyze what would have happened next after defendant reached for the firearm. Rather, we only consider whether the weapon was available—readily accessible—for defendant's use, offensively or defensively. (*Bland, supra*, 10 Cal.4th at p. 997.) Substantial evidence supports the trial court's determination, beyond a reasonable doubt, that it was.

Following *Frierson, supra*, 4 Cal.5th 225, the prosecution bore a greater burden— proof beyond a reasonable doubt—to prove defendant's ineligibility for resentencing under section 1170.126, based on the allegation he was armed with a firearm during the commission of the charged offenses, than it bore on defendant's prior petition. The prosecution satisfied that burden.

DISPOSITION

The order denying the petition for recall of defendant's sentence is affirmed.

                                                             _____

                                                               HULL, J.

We concur:


_____

BLEASE, Acting P. J.


_____

HOCH, J.